**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INTEGRATED CLAIMS SYSTEMS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> OLD GLORY INSURANCE COMPANY, <br><br> *Defendant*. | Case No. 2:15-cv-00412-JRG <br> (Lead Case) |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Integrated Claims Systems, LLC ("Plaintiff") (Dkt. No. 102, filed on September 8, 2020),[1] the response of Old Glory Insurance Company and Seton Health Plan, Inc. (collectively "Defendants") (Dkt. No. 106, filed on September 22, 2020), and Plaintiff's reply (Dkt. No. 107, filed on September 29, 2020). The Court held a hearing on the issues of claim construction and claim definiteness on October 20, 2020. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

**Table of Contents**

I.   BACKGROUND ................................................................................................ 3

II.  LEGAL PRINCIPLES ...................................................................................... 3

    A.   Claim Construction ................................................................................... 3

    B.   Departing from the Ordinary Meaning of a Claim Term ......................... 6

    C.   Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) .................. 7

III. CONSTRUCTION OF DISPUTED TERMS ................................................... 8

    A.   "selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields" ............ 8

    B.   "first portion of the selected ones of the N fields" ................................. 13

    C.   "selected one of M recipients" and "the respective file requirements of the M recipients change" ............................................................................. 15

    D.   Transitional Phrases ............................................................................... 18

IV.  CONCLUSION .............................................................................................. 20

## I.     BACKGROUND

Plaintiff alleges infringement of U.S. Patent No. 6,199,155 (the "'115 Patent"). The '115 Patent is entitled Attachment Integrated Claims System and Operating Method Therefor." The application leading to the '115 Patent was filed on June 5, 2000 and states an earliest priority claim of March 28, 1996.

In general, the '115 Patent is directed to technology for improving the filing, transmission, and processing of forms such as insurance-claim forms.

The abstract of the '115 Patent provides:

> An attachment integrated claims (AIC) system includes an e-mail form (with specific fields that must be filled out) that adjusts itself, in both information required and formatting, to meet the demands of the receiving party. It is particularly advantageous for Electronic Data Interchange (EDI) situations where a user must send similar (but not necessarily identical) messages to several organizations. This is particularly important where, once an e-mail is received by those organizations, the information in the message must be digitally integrated into differing legacy information systems. In other words, the AIC system permits transmission of a dynamic claim form and integrated attachment to an insurance carrier via a non-clearinghouse communications channel. An AIC system including several computers connected via a communications channel, an electronic file, and an operating method therefor are also described.

## II.    LEGAL PRINCIPLES

### A.     Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the

specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*,

299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony

may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

## B.    Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in

effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III.   CONSTRUCTION OF DISPUTED TERMS

### A.   "selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields"

| Disputed Term[3] | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields"<br><br>• '115 Patent Claims 1, 23 | plain and ordinary meaning:<br><br>"the one or more of the form's fields which are allowed to accept data, i.e., must be filled in, are determined based on text entered in a specified field of the form" | indefinite |

**The Parties' Positions**

Plaintiff submits: As described in the '115 Patent, the fields in the insurance forms that must be filled out are determined based on the insurance company designated as the payer in the field

---

[3] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed, and (2) only asserted claims identified in the parties' Joint Claim Construction Chart Pursuant to P.R. 4-5 (Dkt. No. 108) are listed.

for identifying the payer (citing '115 Patent col.16 ll.60–63). Thus, the meaning of the term at issue is plainly "the one or more of the form's fields which are allowed to accept data are determined based on text entered in a specified field of the form." Dkt. No. 102 at 12–13.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '115 Patent col.16 ll.60–63.

Defendants respond: It is unclear what the terms "selected ones," "N fields," and "first predetermined one of the N fields" encompass in the claims. The '115 Patent does not describe "selected ones of the N fields" in sufficient detail to ascertain its scope and the term is not a term of art. Thus, "it is not possible for one to know whether 'selected ones of the N fields' would merely require more than one of the N fields to be selected or if all N fields could be selected, assuming *arguendo* that one would know what constitutes N fields within the '115 Patent." Similarly, the patent does not describe "first predetermined one of N fields" in sufficient detail to ascertain the scope of the term and the term is not a term of art. This uncertainty persists through all the claims that depend from Claims 1 or 23, rendering them all indefinite. Dkt. No. 106 at 6–8.

In addition to the claims themselves, Defendants cite the following **intrinsic evidence** to support their position: '115 Patent col.16 ll.60–63.

Plaintiff replies: The selected ones of the N fields are those fields that must be filled in. These fields are those determined based on data in the predetermined field of the N fields. The term "N fields" plainly refers to a number of fields (which the claims state must be greater than two). And the "first" predetermined one of the fields in Claims 1 and 23 is distinct from the "second" predetermined one of Claims 3 and 25, which depend from Claims 1 and 23 respectively, and may be a field that can accept a "payer name" as set forth in Claims 4 and 26, which depend from Claims 3 and 25 respectively. Indeed, Defendant Seton acknowledges in its Motion to Dismiss that

"'the selected ones of N fields … are determined responsive to text entered into a first predetermined one of the N fields'" and has a definite meaning (quoting Dkt. No. 74[4] at 13–14). Dkt. No. 107 at 6–13.

Plaintiff cites further **intrinsic evidence** to support its position: '115 Patent, at [57] Abstract, col.16 l.41 – col.17 l.9.

### Analysis

The issue in dispute is whether the meaning of "selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields" is reasonably certain in the context of the claims and the rest of the intrinsic record. It is.

The meaning of this term is reasonably certain in the context of the surrounding claim language. For instance, Claims 1, 3 and 4 provide as follows:

> **1**. A graphical user interface (GUI) instantiated by computer software for generating a file from text data entered into *selected ones of N fields in the GUI*, wherein *the selected ones of the N fields* which accept text data are *determined responsive to text entered into a first predetermined one of the N fields*, and wherein *N is an integer greater than 2*.

> **3**. The GUI as recited in claim 1, wherein the selected ones of the N fields is further limited responsive to text entry into a *second predetermined one* of the N fields.

> **4**. The GUI as recited in claim 3, wherein the *first predetermined one of the N fields accepts a payer name*, and wherein the second predetermined on of the N fields accepts a CPT code.

'115 Patent col.29 ll.43–49, col.29 ll.54–60 (emphasis added). Claim 1 recites—with reasonable certainty—a GUI that includes at least three (N>2) fields, wherein certain of these fields accept text data and wherein which of the fields are the selected ones is determined in response to text in a predetermined field (the predetermined one of the N fields). The "first" predetermined field is

---

[4] Seton Health Plan, Inc.'s Motion to Dismiss

distinct from the "second" predetermined field in Claim 3. And Claim 4 provides an example of a predetermined field: a field that accepts a payer name. Claims 23, 25 and 26 provide similar context.

In the claims, "one" refers to a singular field and "ones" refers to a plurality of fields. For instance, Claims 1 and 23 each recite "selected ones" to indicate the selected fields and "predetermined one" to indicate the field with the text which determines the selected fields. The distinctive use of the plural and singular forms "ones" and "one" indicates that there is a plurality of selected fields. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("At the outset, the claim recites 'support wires' in the plural, thus requiring more than one welded 'support wire.'"). Thus, the Court rejects Plaintiff's position that "ones" indicates one or more.

While the meaning of the claim language is reasonably certain on its face, the description of the invention provides a clarifying example:

> In order to increase the efficiency of the clerical staff at the provider's office, it is desirable to give them basically the same form to fill out every time, i.e., information is always in the same place on the form. To do this a template is created. What actually appears on the screen of the preparer is always the same. What changes is that any given insurance company will desire only a particular subset of the total number of fields. So *if insurance company A is chosen, then fields 1,2,3,7,9, … have to be filled in*, whereas, *if insurance company B is chosen, then fields 2,3,4,5,7,11, … have to be filled in*. The fields not needed are automatically signified in some way by the AIC software, e.g., if insurance company A does not need Field #4 then that block on the screen is gray and can't be typed into (i.e., is "write protected"). Thus a "customized claim form" is provided for every insurance company based on a single, universal compilation of fields. As described below, what allows this method to work is that there is AIC software at the insurance company that has been coordinated with the AIC software at the providers office.

> The *AIC Software GUI asks for the name of the insurance company*, which can be typed in or selected from a directory. *Once the insurance company has been identified, the fields needed to complete the insurance company's PAC form are displayed on the screen 212 of the service provider's computer system 210*.

*Id.* at col.16 l.53 – col.17 l.9 (emphasis added). This describes a system in which a specific field (a predetermined field) has the name of an insurance company (a payer) and in response to entry of the name (text entered into the predetermined field) the other fields that must be completed are determined. This passage parallels and informs the meaning of the claims, even though it does not use the exact phrasing of the claims. *See* MPEP § 2173.05(e) ("The mere fact that a term or phrase used in the claim has no antecedent basis in the specification disclosure does not mean, necessarily, that the term or phrase is indefinite."); *Enzo Biochem, Inc. v. Gen-Probe Inc.,* 323 F.3d 956, 964 (Fed. Cir. 2002) ("The Guidelines, like the Manual of Patent Examining Procedure ('MPEP'), are not binding on this court, but may be given judicial notice to the extent they do not conflict with the statute.").

Accordingly, Defendants have failed to prove any claim is indefinite for including "selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields." While the term is not indefinite, the Court provides the following construction for clarity:

- "the selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields" means "the two or more selected fields of the N fields which accept text data are determined in response to text entered into a first predetermined field of the N fields."

### B.      "first portion of the selected ones of the N fields"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "first portion of the selected ones of the N fields"<br><br>• '115 Patent Claims 2, 24 | plain and ordinary meaning:<br><br>"a portion of the selected ones of the N fields in which data is entered automatically" | indefinite |

### <u>The Parties' Positions</u>

Plaintiff submits: The "first portion of the selected ones of the N fields" refers to "a portion of the selected ones of the N fields[] in which data is entered automatically." Dkt. No. 102 at 13–14.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '115 Patent fig.5A, col.17 ll.10–13.

Defendants respond: The meanings of "the selected ones" and "N fields" in the term at issue are not reasonably certain. Further, "portion" is a term of degree and the '115 Patent does not provide the requisite objective boundaries for that degree. Finally, the phrase "first portion" is introduced with "the" but the claims do not provide an antecedent reference for the phrase. Thus, the claim language is indefinite. Dkt. No. 106 at 8–11.

Plaintiff replies: As stated in the claims, the first portion of the selected fields are filled automatically when the text is entered in the first predetermined field. Such automatic population of fields is also described in the '115 Patent (citing '115 Patent col.17 ll.5–17). And Defendant Seton recognized this definite meaning in its Motion to Dismiss (citing Dkt. No. 74 at 14). Dkt. No. 107 at 13–16.

Plaintiff cites further **intrinsic evidence** to support its position: '115 Patent col.16 l.53 – col.17 l.17.

<u>Analysis</u>

The issue in dispute is whether the meaning of "first portion of the selected ones of the N fields" is reasonably certain in the context of the claims and the rest of the intrinsic record. It is.

The meaning of this term is reasonably certain in the context of the surrounding claim language. For instance, Claims 1 and 2 provide as follows:

> **1**. A graphical user interface (GUI) instantiated by computer software for generating a file from text data entered into ***selected ones of N fields*** in the GUI, wherein the selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields, and wherein N is an integer greater than 2.
>
> **2.** The GUI as recited in claim 1, wherein ***the first portion of the selected ones of the N fields*** are automatically filled in when the text is entered into the first predetermined one of the N fields.

'115 Patent col.29 ll.43–53 (emphasis added). Claim 1 recites that there are at least three fields in the GUI (N>2) and at least two fields are selected to accept text data (the selected ones). Claim 2 recites that some of the selected fields are automatically filled (the first portion of the selected fields). As there are at least two selected fields, the "selected fields" inherently includes portions. The Court therefore understands reference to "the first portion" has implicit antecedent basis in the "the selected ones." *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (holding that "an antecedent basis can be present by implication"). The Court understands "first" is used in "first portion" to provide a name to the portion that is automatically populated, in a manner similar to the use of "first" in "first predetermined one" as explained above. Claims 23 and 24 provide similar context.

While the meaning of the claim language is reasonably certain on its face, the description of the invention also provides a clarifying example:

> The AIC Software GUI asks for the name of the insurance company, which can be typed in or selected from a directory. Once the insurance company has been identified, the fields needed to complete the insurance company's PAC form are

displayed on the screen 212 of the service provider's computer system 210. ***The AIC software advantageously can <u>automatically fill</u> in all the <u>parts of the form</u> that are specific to the service provider, e.g., name, address, Provider Identification Number (PIN), etc.*** It is estimated that this alone eliminates 20% of the work needed to fill out the PAC form. An electronic signature could advantageously be added at this time for the service provider or could be added as part of the final review and approval before the completed PAC application is transmitted.

*Id*. at col.17 ll.5–18 (emphasis added). This describes that parts of the form (a portion of the selected fields) may be automatically populated. This passage parallels and informs the meaning of the claims, even though it does not use the exact phrasing of the claims.

Accordingly, Defendants have failed to prove any claim is indefinite for including "first portion of the selected ones of the N fields." The Court determines that this term has its plain and ordinary meaning without the need for further construction.

### C.     "selected one of M recipients" and "the respective file requirements of the M recipients change"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "selected one of M recipients"<br><br>• '115 Patent Claim 23 | Plain and ordinary meaning:<br><br>"the recipient of the generated file, e.g., an insurance company receiving an insurance form" | indefinite |
| "the respective file requirements of the M recipients change"<br><br>• '115 Patent Claim 23 | | |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits: In the context of the claims the "[selected] one of the M recipients is the recipient of the generated file, e.g., an insurance company receiving an insurance form." Dkt. No. 102 at 14.

Defendants respond: The meanings of these terms are unclear as the meaning of "M recipients" is unclear. For instance, "'M' is used in earlier non-asserted claims to refer to items other than recipients." And "M recipients" is not a term of art. Thus, "other than knowing that 'M' would refer to an integer, there is no other context for what 'M recipients' would encompass. More specifically, neither the claims nor the specification define who a recipient is." Similarly, it is not clear if "selected one of M recipients" is limited to only one selected recipient. Dkt. No. 106 at 11–12.

Plaintiff replies: In context, "M recipients" refers to an integer number of receiving parties and "the selected one of M recipients" refers to the recipient of the transmitted and generated file. The '115 Patent describes an example of a system by which a user can send, via e-mail, a form to several organizations according to the demands of the receiving party (citing '115 Patent, at [57] Abstract). And Defendant Seton recognized this definite meaning in it Motion to Dismiss (citing Dkt. No. 74 at 13). Dkt. No. 107 at 17–19.

Plaintiff cites further **intrinsic evidence** to support its position: '115 Patent, at [57] Abstract.

**Analysis**

The issues in dispute are whether the meanings of "selected one of M recipients" and "the respective file requirements of the M recipients change" are reasonably certain in the context of the claims and the rest of the intrinsic record. They are.

The meanings of these terms are reasonably certain in the context of the surrounding claim language. For instance, Claims 23, 25, 26, and 27 provide as follows:

> **23.** A graphical user interface (GUI) instantiated by computer software for generating a ***file transmittable to a <u>selected one of M</u> recipients*** from text data entered into selected ones of N fields in the GUI, wherein:
> the selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields,
> the computer ***software is updated as the respective file requirements of <u>the M recipients</u> change***, and
> N is an integer greater than 2.

> **25.** The GUI as recited in claim 23**,** wherein the selected ones of the N fields is further limited responsive to text entry into a second predetermined one of the N fields.

> **26.** The GUI as recited in claim 25, wherein the first predetermined one of the N fields accepts a payer name, and wherein the second predetermined on of the N fields accepts a CPT code.

> **26**. The GUI as recited in claim 26, wherein the computer software is automatically updated whenever the ***file is transmitted to <u>the one of the M recipients</u> corresponding to the payer name.***

'115 Patent col.33 ll.5–14, col.33 ll.19–25 (emphasis added). Claim 23 recites a file that is transmittable to one of several (M) recipients. Claim 26 further specifies that the file is transmitted to the recipient corresponding to the payer name. These claims do not state that the file is transmittable only to the selected recipient. Rather, they state that it must be transmittable to a selected recipient. Given that "a" in a claim routinely denotes "one or more" and that the claims refer to a plurality of "recipients" it is reasonably certain that the file may be transmittable to more than one recipient.

Accordingly, Defendants have failed to prove any claim is indefinite for including "selected one of M recipients" or "the respective file requirements of the M recipients change." The Court determines that these terms have their plain and ordinary meanings without the need for further construction.

### D.    Transitional Phrases

### <u>The Parties' Positions</u>

Plaintiff submits: In context, the "wherein" transitional phrase of the claims plainly indicates open-ended claims. Dkt. No. 102 at 14–15.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '115 Patent col.16 ll.63–66.

Defendants respond: It is not clear whether the transitional phrase "wherein" introduces limiting features of the claims since Federal Circuit precedent allows that a wherein clause may not be limiting. And the description of the invention is too vague and abstract to allow one to determine whether the "wherein" clauses are meant to be limiting. Thus, Claims 1 and 23, and their dependent claims, are indefinite. Dkt. No. 106 at 12–15.

In addition to the claims themselves, Defendants cites the following **intrinsic evidence** to support their position: '115 Patent figs,.2A, 4, 5A, 5B, col.10 ll.35–37, col.10 ll.43 – col.13 l.21, col.13 l.54 – col.14 l.8, col.14 ll.47–49, col.29 ll.37–41; '115 Patent File Wrapper, June 5, 2000 Utility Patent Application Transmittal (Defendants' Ex. A, Dkt. No. 106-1), September 11, 2000 Notice of Allowability (Defendants' Ex. B, Dkt. No. 106-2); U.S. Patent No. 6,003,007;[5] U.S. Patent No. 6,076,066.[6]

Plaintiff replies: The '115 Patent provides detailed and concrete examples of how to build and operate the invention. Dkt. No. 107 at 19–21.

---

[5] The '115 Patent is related to U.S. Patent No. 6,003,007 through continuation applications. '115 Patent, at [63] Related U.S. Application Data. U.S. Patent No. 6,003,007 is available at https://patentcenter.uspto.gov/#!/applications/08824010.

[6] The '115 Patent is related to U.S. Patent No. 6,076,066 through continuation applications. '115 Patent, at [63] Related U.S. Application Data. U.S. Patent No. 6,076,066 is available at https://patentcenter.uspto.gov/#!/applications/09232805.

Plaintiff cites further **intrinsic evidence** to support its position: '115 Patent col.16 l.30 – col.17 l.13.

**<u>Analysis</u>**

The issue in dispute is whether it is reasonably certain that the "wherein" transitions introduce limitations. It is and they do.

The "wherein" transitional phrase in Claims 1 and 23, and in their dependent claims, denotes an open-ended claim and introduces limitations. This is plain from the claim language itself. For instance, Claims 1–4 provide as follows:

> **1**. A graphical user interface (GUI) instantiated by computer software for generating a file from text data entered into selected ones of N fields in the GUI, ***wherein*** the selected ones of the N fields which accept text data are determined responsive to text entered into a first predetermined one of the N fields, and ***wherein*** N is an integer greater than 2.

> **2**. The GUI as recited in claim 1, ***wherein*** the first portion of the selected ones of the N fields are automatically filled in when the text is entered into the first predetermined one of the N fields.

> **3**. The GUI as recited in claim 1, ***wherein*** the selected ones of the N fields is further limited responsive to text entry into a second predetermined one of the N fields.

> **4**. The GUI as recited in claim 3, ***wherein*** the first predetermined one of the N fields accepts a payer name, and ***wherein*** the second predetermined on of the N fields accepts a CPT code.

'115 Patent col.29 ll.43–60 (emphasis added). The phrases following the wherein transition plainly state more than a result or intended purpose of the limitations recited before. For instance, the wherein clause of Claim 1 provides that the selected fields are determined by the text entered into a predetermined field. This introduces a limiting feature of the selected fields (how they are selected) and also a new field (the predetermined field). The clause also introduces a limiting feature of the N fields (that there are at least 3). Claims 2, 3, and 4 each introduce further limiting features: Claim 2 introduces automatic filling of some of the selected fields, Claim 3 introduces a

second predetermined field that further limits the selected fields, and Claim 4 limits the first predetermined field to a payer name and the second predetermined field to a CPT code. These claims establish that the wherein clauses are certainly not of the kind that are not limiting. *See Griffin v. Bertina*, 285 F.3d 1029, 1033–34 (Fed. Cir. 2002) (holding a wherein clause limiting when it elaborates the meaning of other claim language). And that the dependent claims add limitations to the claims from which they depend indicates that wherein should be interpreted as an open-ended transition. See MPEP 2111.03 § II ("The transitional phrase 'consisting of' excludes any element, step, or ingredient not specified in the claim. … A claim which depends from a claim which 'consists of' the recited elements or steps cannot add an element or step."); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002) ("The Guidelines, like the Manual of Patent Examining Procedure ('MPEP'), are not binding on this court, but may be given judicial notice to the extent they do not conflict with the statute."); *Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1375–76 (Fed. Cir. 2000) (noting the presence of narrowing limitations in a dependent claim indicates that a transitional phrase in the independent claim is an open-ended transitional phrase).

Accordingly, Defendants have failed to prove any claim is indefinite for including a "wherein" transitional phrase. The Court determines that "wherein" has its plain and ordinary meaning without the need for further construction.

## IV.    CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the '115 Patent. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not

expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 17th day of November, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE